**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS**

Jecorrey Duncan, (K50255),

Petitioner,

v.

Andrea Tack, Warden,
Dixon Correctional Center,

Respondent.

Case No. 15 C 7579

Hon. Robert W. Gettleman

**MEMORANDUM OPINION AND ORDER**

## I. Background

Petitioner Jecorrey Duncan, a prisoner at the Dixon Correctional Center, brings this *pro se* habeas corpus petition pursuant to 28 U.S.C. § 2254 challenging his attempted murder and aggravated battery with a firearm convictions from the Circuit Court of Cook County. The present habeas corpus petition was stayed while Petitioner pursued a successive state court postconviction petition alleging ineffective assistance of trial and appellate counsel for failing to challenge his aggravated battery convictions under Illinois's one-act, one-crime doctrine. (Dkt. 9.) The state court granted Petitioner's postconviction petition as to one of the aggravated battery with a firearm conviction, but the remaining attempted murder convictions and aggravated battery conviction remain in effect. (Dkt. 103-1.). This Court lifted the stay and ordered briefing on the habeas corpus petition. (Dkt. 106.) The petition is fully briefed and ready for ruling by the Court. (Dkt. 115.)

The following facts are drawn from the state appellate court decisions on direct appeal, *Illinois v. Duncan*, 2011 IL App (1st) 071766-U, and first postconviction proceeding. *Illinois v.*

*Duncan*, 2014 IL App (1st) 130878-U. State court factual findings, including facts set forth in the state appellate court opinions, have a presumption of correctness, and Petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C § 2254(e)(1); *Tharpe v. Sellers*, 583 U.S. 33, 34 (2018) (per curiam); *Hartsfield v. Dorethy*, 949 F.3d 307, 309 n.1 (7th Cir. 2020) (citations omitted).

The case arises out of a gang shooting on November 14, 2001, on Chicago's westside. *Duncan*, 2011 IL App (1st) 071766-U, ¶ 4. A group of men associated with one gang were standing on a street corner around 8 p.m., that evening. *Id.* Another group of men from a rival gang, including Petitioner, drove up in a truck. *Id.* The two groups of men exchanged words and then the truck drove off with one of the men in the truck saying, "we'll be back." *Id.*

Shortly after, a group of plain-clothes Chicago police officers in an unmarked squad car pulled up at the corner after seeing one of the men on the corner throw an object at a nearby fence. *Id.* at ¶ 5. The officers placed the men at the corner in handcuffs and put the man who threw the object into their squad car. *Id.* The officers then heard loud gunshots, and saw three men holding a rifle, shotgun, and handgun, respectively, shooting at them. *Id.* The officers identified themselves as police and told the men to stop but they did not, so the officers took cover and returned fire. *Id.* The man in the car, Deandre Bullock, one of the officers, Officer Ryan, and a bystander exiting a store, Temeko Smith, were all struck by the gunfire. *Id.* Officer Ryan explained that he suffered a puncture wound on his arm that he believed was caused by a shotgun pellet. *Id.*

Three of the police officers made in-court identifications of Petitioner as the man shooting the shotgun at them. *Id.* at ¶ 7. Additionally, one of the other shooters, Willie Wells, was injured

during the shootout, arrested by the police, and then taken to the hospital. *Id.* at ¶¶ 4, 6. Wells told the police that his brother fired the shotgun. *Id.* at ¶ 6. Evidence was introduced at trial that Petitioner and Wells are half-brothers. *Id.* at ¶ 16. Wells also provided a statement to the police leading them to search for Petitioner and a third man, Lashaun Members, after the shooting. *Id.* at ¶ 8.

Petitioner was later arrested and extradited from Georgia back to Chicago two years after the shooting. *Id.* at ¶ 10. During initial police questioning, Petitioner claimed that he was with a female friend at a Target store at the time of the shooting. *Id.* However, a police detective testified that Petitioner later admitted to participating in the shooting during a subsequent custodial interrogation. *Id.* at ¶ 12. A handwritten statement was also obtained from Petitioner during police questioning and introduced into evidence at trial. *Id.* at ¶ 13.

Petitioner testified at trial, denying making any statements to the police. *Id.* at ¶ 16. He admitted that his signature was on the handwritten confession, but he explained he did not read the document before signing it. *Id.* Petitioner explained that he had been questioned by the police for two days and that he was hungry and tired when he claimed he blindly signed the statement. *Id.*

Petitioner admitted during his testimony that he was riding with Wells and Members in a truck on the day of the shooting. *Id.* at ¶ 15. However, he explained that the group went to a store and later a restaurant before they dropped him off around 6:00 p.m., two hours before the shooting. *Id.* Petitioner testified that he was with his cousin’s girlfriend, Nicole, at a Target store, at the time of the shooting. *Id.* Someone called Nicole a little after 8:00 p.m., that evening telling her that Wells had been shot and taken to the hospital. *Id.* Petitioner claims that he and

Nicole went to the hospital but were not allowed to see Wells. *Id.* He stated he remained in Chicago until February 2023, when he moved to Georgia. *Id.*

Forensic investigators recovered a .45 caliber handgun, a 20-gauge shotgun, and a .30 caliber carbine rifle from the crime scene, along with shotgun shells. *Id.* at ¶ 14. The recovered shells were not a consistent match to the recovered shotgun, but the latent palm print recovered from the shotgun matched to Petitioner. *Id.*

As mentioned, Bullock, the man detained by the police and sitting in the squad car was struck by gunfire. *Id.* at ¶ 5. A stipulation presented in trial stated that Bullock was brought to Cook County Hospital for his gunshot wounds. *Duncan*, 2014 IL App (1st) 130878-U, ¶ 18. A nurse working at the hospital found a fired bullet on the emergency room floor that evening. *Id.* She did not know where the bullet came from or if the bullet was associated with a particular patient. *Id.* The bullet was turned over to the police and a forensic investigation determined that it was not fired by the three offenders' weapons recovered at the crime scene. *Id.* Regarding the officers who returned fire, it was determined that the recovered bullet was not fired from one of the three officers' weapons, but it was "inconclusive" as to whether the recovered bullet came from either of the other two officers' weapons. *Id.*

Following the trial, Petitioner was found guilty of six counts of attempted first degree murder and two counts of aggravated battery with a firearm. *Duncan*, 2011 IL App (1st) 071766-U at ¶ 17. He was sentenced to six 30-year concurrent sentences for the attempted murder convictions, to one 12-year term for one of the aggravated battery convictions to be served consecutively to the 30-year term, and to one 8-year term for the other aggravated battery conviction to be served concurrently with the 12-year aggravated battery sentence. *Id.*

On direct appeal, the Appellate Court of Illinois initially remanded to the trial court for additional proceedings regarding Petitioner's *Batson v. Kentucky*, 476 U.S. 79 (1986), claim. *Id.* at ¶ 2. Following the completion of the remand, the appellate court rejected all of Petitioner's claims and affirmed his convictions and sentences. *Id.* at ¶ 76. The Supreme Court of Illinois denied Petitioner's Petition for Leave to Appeal (PLA), completing the direct appeal proceedings. *Illinois v. Duncan*, No. 113805, 968 N.E.2d 84 (Ill. Mar. 28, 2012).

Petitioner then filed a postconviction petition, *Duncan*, 2014 IL App (1st) 130878-U, ¶ 21, that was denied by the state trial court. *Id.* at ¶ 22. The state appellate court affirmed the denial of the postconviction petition. *Id.* at ¶ 23. Of various issues raised in the postconviction appeal, Petitioner argued that his trial and appellate counsel were ineffective for failing to raise a one-act one-crime challenge regarding his 30-year sentence for attempted murder of Bullock, and the associated 12-year sentence for the aggravated battery with a firearm of Bullock. *Id.* at ¶ 43. The state appellate court on postconviction appeal found that this claim was forfeited because Petitioner did not raise it in his postconviction petition. *Id.* at ¶¶ 47-49. The state appellate court noted that Petitioner could assert his ineffective assistance of counsel claim regarding counsel's failure to raise the one-act, one-crime challenge via a successive postconviction petition. *Id.* at ¶ 54.

Petitioner then requested permission to file a successive postconviction petition with the state trial court. (Dkt. 3, pg. 3-6.) He also brought the present 28 U.S.C. § 2254 habeas corpus petition and sought to stay this case pending the resolution of his state successive postconviction proceedings. (Dkt. 1, 3.) This Court granted Petitioner's request to stay these proceedings. (Dkt. 9.) Petitioner ultimately received relief in his successive postconviction proceedings on the one-act, one-crime claim. (Dkt. 103-1.) Petitioner's aggravated battery with a firearm

conviction as to Bullock was vacated, but his other aggravated battery with a firearm conviction and also his attempted murder convictions remained. *Id.* The Court lifted the stay, and the parties briefed the habeas corpus petition making the petition ready for adjudication by the Court.

Petitioner raises five claims in his present habeas corpus petition. (Dkt. 1.) Claim One focuses on the bullet recovered by the nurse from the ER floor at Cook County Hospital. (Dkt. 1, pgs. 5, 10-15.) Petitioner alleges that the bullet was turned over to forensic investigators and later documented on an Illinois State Police fired bullet worksheet. The worksheet states that it is a "9mm / 38 caliber" bullet, there was apparent blood and tissue residue, but the residue was removed with disinfectant. *Id.* at 27.

Petitioner argues that destruction of the blood and tissue evidence on the recovered bullet and failure to disclose that fact to the defense prior to trial prejudiced him because he was unable to use that to impeach the testifying police officers. The stipulation presented to the jury was uncertain as to whether the recovered bullet was connected to this case. Petitioner argues that the blood and tissue residue could have been tested to see if it connected the bullet to Bullock, the man in the police car struck by bullets and taken to the Cook County Hospital. The stipulation did state that none of the offenders' guns shot Bullock and Petitioner claims Bullock could not say who shot him. This leaves the possibility that it was the police officers who shot Bullock because their guns were the same caliber as the bullet recovered at the hospital. If Bullock was linked to the bullet recovered through DNA testing of the blood and tissue on the bullet, and that bullet is the same caliber as the officers' weapons, that could impact their credibility according to Petitioner. Petitioner argues that the officers' credibility was a central issue as they identified him and the other assailants as the shooters.

Claim Two raises an associated ineffective assistance of trial counsel argument arising out of Claim One. *Id.* at 5, 15-18. Petitioner raises trial counsel's alleged failure to pursue the worksheet and associated defense challenging the officers' credibility and instead entering into the stipulation regarding the bullet that Petitioner now challenges.

Claim Three raises a challenge to the sufficiency of the evidence. *Id.* at 6, 18-21. Finally, Claim Four challenges the introduction of statements purportedly made by his co-assailants that implicated Petitioner in the crime through the testimony of the police officers. *Id.* at 6, 22-25.

## II. Analysis

### A. Mootness

Respondent argues that Claims One, Two, and Three are moot, or alternatively, are procedurally defaulted. Turning to the mootness issue, Respondent's argument is predicated upon the fact that Petitioner's conviction for aggravated battery of Bullock was merged into the attempted murder conviction under Illinois's one-act, one-crime doctrine. (Dkt. 103-1.) As Respondent sees it, Petitioner is arguing that he did not shoot Bullock, and wanted the blood and tissue evidence on the bullet to prove that. (Dkt. 109, pg. 7.) Continuing with this argument, Respondent asserts that whether Petitioner shot Bullock is relevant only to the aggravated battery conviction as he is liable under an accomplice theory for the attempted murder conviction. With the aggravated battery conviction merged into the attempted murder conviction under the one-act one-crime doctrine, Respondent believes any claim regarding the blood and tissue is moot. This leads Respondent to argue that Claims One, Two, and Three are moot as they all go to the question of whether Petitioner shot Bullock.

A case is moot when it is impossible for the Court to provide relief to a prevailing party. *Chafin v. Chafin*, 568 U.S. 165, 172 (2013). It is difficult for a habeas corpus claim challenging a conviction to become moot, but it is possible. For example, death of a prisoner moots a habeas corpus case. *McClendon v. Trigg*, 79 F.3d 557, 558 (7th Cir. 1996). Even when a sentence expires and a prisoner is released, there is a presumption that a challenge to a conviction continues because there is a presumption of collateral consequences such as the inability to vote or possess a firearm. *Spencer v. Kemna*, 523 U.S. 1, 14 (1998).

Petitioner remains incarcerated on the attempted murder and other aggravated battery convictions after he obtained relief on his one-act, one-crime claim in his successive postconviction petition. There is a live controversy in this case as Petitioner is alleging that he is being held in custody in violation of his federal rights and seeks him immediate release or retrial. The Court can grant that relief to him should he show he is entitled.

Respondent's mootness argument fails to appreciate the scope of Petitioner's arguments in the habeas corpus petition regarding the bullet. Petitioner points to the bullet not just to demonstrate that he did not shoot Bullock, it is also to show that it was the police officers who shot him. Petitioner's goal is to attack the officers' credibility. (Dkt. 1, pg. 14) ("Further if it was substantiated that the police shot Bullock at least once, a reasonable juror could question the credibility of any police testimony directing responsibility for the other Bullock wounds onto defendant.").

The officers' credibility is relevant to all convictions at issue in this case including those that were not affected by Petitioner's success on his one-act, one-crime argument. Petitioner asserted in his trial testimony that he was not at the scene; instead, claiming he was at a Target

store at the time of the shooting. *Duncan*, 2011 IL App (1st) 071766-U, ¶ 10. The officers countered in their testimony that Petitioner was one of the shooters. *Id*. at ¶ 7. Claims One, Two, and Three are not moot because all three ultimately arise out the same argument that Petitioner was allegedly denied the ability to challenge the officers' credibility by denying him access to the bullet evidence (Claim One), the failure of his attorney to pursue the issue (Claim Two), and questioning the sufficiency of the evidence supporting his convictions (Claim Three).

Respondent's arguments to the contrary must be rejected. First, Respondent points to the language of 28 U.S.C. § 2254 stating that a writ of habeas corpus must be challenging a state court judgment. Petitioner, however, challenges the validity of the state court judgment resulting in his present custody of attempted murder and remaining aggravated battery convictions. (Dkt. 1, pg. 1). There is a judgment presently being challenged in this case.

Additionally, Respondent invokes *Brown v. Vanihel*, 7 F.4th 666 (7th Cir. 2021). However, in *Brown*, the Seventh Circuit held that the case was moot after the State had dismissed *all* of Petitioner's convictions. *Id*. at 669, 673. Notably, *Brown* pointed out "there is no longer any underlying state-court judgment." *Id*. at 673. In contrast, there is an underlying state-court judgment in this case, and Petitioner, through his broader challenge to the officers' credibility, is seeking to attack his remaining convictions. *See Simpson v. Battaglia*, 458 F.3d 585, 595 (7th Cir. 2006) (holding that state prisoner's challenge to death sentence was not moot when commuted to life imprisonment because he could continue to seek a lower sentence following commutation). Respondent's mootness arguments are denied.

**B. Procedural Default**

Moving beyond mootness to procedural default, Respondent's procedural default arguments for Claims One and Two raises a similar line of argument that Petitioner failed to properly exhaust his claims in the state court because he only raised the claims within the context of challenging his now vacated aggravated battery of Bullock conviction. This argument touches upon the fair presentment requirement.

A prisoner must raise both the operative facts and legal principles to the state court to exhaust a claim. *Rogers v. Wells*, 96 F.4th 1006, 1013 (7th Cir. 2024). The purpose of fair presentment is to give the state court a "meaningful opportunity to pass upon the substance of the claims later presented in federal court." *Rodriguez v. Scillia*, 193 F.3d 913, 916 (7th Cir. 1999). The Justices instruct that exhaustion requires "reference to a specific federal constitutional guarantee, as well as a statement of the facts that entitle the petitioner to relief." *Gray v. Netherland*, 518 U.S. 152, 162-623 (1996).

Petitioner does not cite to, nor is the Court aware of, any authority instructing that a prisoner must identify the specific conviction at issue when there are multiple convictions in a state court case to meet the exhaustion requirement. To the contrary, the relevant question is whether the prisoner provided "enough detail to have sufficiently alerted the state court to his federal constitutional claim." *Ward v. Jenkins*, 613 F.3d 692, 697 (7th Cir. 2010). The Court is also mindful that "hypertechnical congruence between the claims made in the federal and state fora is not required, however, and a petitioner may reformulate his claims somewhat, so long as the substance of his argument remains the same." *Id.* (internal citations and quotation marks omitted). Respondent does not contest that Petitioner presented the operative law and facts to the

state court to put it on notice of his constitutional claims raised in Claims One and Two. Respondent's attempt to add an additional requirement that Petitioner was also required to specify the relevant conviction is rejected.

As to Claim Three, Respondent argues that Petitioner failed to raise the claim, a sufficiency of the evidence challenge, through one complete round of state court review. This is a more traditional procedural default argument. The complexity of this argument, however, is that Respondent concedes that Petitioner raised an ineffective assistance of counsel claim challenging the sufficient of the evidence in his postconviction petition and on appeal. It is true that these are ineffective assistance of counsel arguments, but ineffective assistance of counsel can be used to excuse an otherwise defaulted claim. *Whyte v. Winkleski*, 34 F.4th 617, 624 (7th Cir. 2022). Additionally, the Seventh Circuit has recognized that claims can be exhausted when raised as a component of an ineffective assistance of counsel claim when the ineffective assistance of counsel claim is the proper vehicle to raise the underlying claim. *Malone v. Wells*, 538 F.3d 744, 755 (7th Cir. 2008). *Malone* specifically made this point when rejecting the application of *Lewis v. Sternes*, 390 F.3d 1019 (7th Cir. 2004), in that case. 538 F.3d at 755. Respondent cites to *Lewis* in this case for the same principle that *Malone* rejected. (Dkt. 109, pg. 10-11.) Respondent's procedural default arguments are denied.

## III. Conclusion

Respondent's arguments that Claims One, Two, and Three are moot, or are alternatively procedurally defaulted, are denied. Respondent must answer Claims One, Two, and Three on the merits by December 4, 2026. Respondent previously briefed Claim Four on the merits so no additional answer on the merits for that claim is required. Petitioner may file a reply to

Respondent's answer as to Claims One, Two, Three, and Four by January 4, 2027. The Court will address all claims on the merits once fully briefed by the parties.

ENTERED:

DATE: October 21, 2026

ROBERT W. GETTLEMAN
United States District Judge